UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS FINLEY,

Petitioner,

v.

SHERRY L. BURT,

Respondent.

_____/

CASE NO. 2:15-cv-14455

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING THE INITIAL AND
SUPPLEMENTAL HABEAS CORPUS PETITIONS [ECF NOS. 1 AND 8],
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
GRANTING PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Carlos Finley, a state inmate at the Muskegon Correctional Facility

in Muskegon, Michigan, seeks the writ of habeas pursuant to 28 U.S.C. § 2254.

Petitioner challenges his Michigan convictions for carjacking, MICH. COMP. LAWS §

750.529a, unlawfully driving away an automobile ("UDAA"), MICH. COMP. LAWS

§ 750.413, and receiving and concealing stolen property, MICH. COMP. LAWS §

750.535(7).   He raises several claims about the evidence admitted at his trial, his

sentence, and his trial and appellate attorneys.   The State, through the Michigan

Attorney General, urges the Court to deny relief because Petitioner's claims are

waived, procedurally defaulted, not cognizable on habeas review, meritless, or were

reasonably rejected by the state courts.   Having reviewed the pleadings and record,

the Court agrees that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the Court will deny Petitioner's initial and supplemental petitions. Although the Court also declines to issue a certificate of appealability, the Court will allow Petitioner to appeal this decision *in forma pauperis*.

## I.    Background

### A. The Charges, Trial, and Sentence

Petitioner initially was charged with armed robbery, carjacking, UDAA, and possession of a firearm during the commission of a felony (felony firearm). 1/15/13 Trial Tr. at 20, ECF No. 12-7, PageID.409. During Petitioner's subsequent jury trial in Wayne County Circuit Court, the prosecutor amended the charges to add one count of receiving and concealing stolen property. *Id.* at 78-80, PageID.467-469. The charges arose from an incident in Detroit, Michigan on August 17, 2012.

Keith Easley testified at trial that at about 3:30 a.m. on August 17, 2012, he was waiting for a friend in the parking lot of a school where his friend worked as a security guard. He was seated in a 2002 Buick Century car when he saw Petitioner come around the corner carrying a black assault rifle with a clip in it. Petitioner approached Easley, aimed the gun at Easley's head, and asked for money. When Easley demonstrated that he did not have any money on him, Petitioner told him to get out of the car and run. Easley complied and left his keys on the armrest in the car. He subsequently heard the car start and saw it leave the parking lot. He ran to

a neighbor's home and asked the neighbor to call the police. When the police arrived, he described the suspect. Two days later, he attended a lineup at the police precinct and identified Petitioner as the man who had carjacked him. *Id*. at 29- 67, PageID.418-456.

Crystal Love testified that Easley was her sister's boyfriend and that she loaned him her 2002 Buick on August 17, 2012. She learned that her car had been taken later that morning. On August 19, 2012, Love's mother informed her that she had seen the car and was following it. Love then took another car to meet her mother at a location near Warren Avenue and Alter Road, where she saw Petitioner in her car. She followed Petitioner for a while and eventually saw him park the car on Algonquin and get out. She called the police, and at a lineup in the police precinct that same day, Love identified Petitioner. At trial, she had no doubt that Petitioner was the man she saw driving her car on August 19, 2012. *Id.* at 68-77, PageID.457-466.

Detroit police officer John Berryman testified that he and several other officers went to Algonquin Street on August 19, 2002, after receiving a call from Crystal Love. Love said that she found her vehicle and was watching it at 4860 Algonquin Street. Love explained the man she observed driving her stolen car went inside the house at that address and had not come out.

Once officers arrived at the residence, the owner gave permission to enter. Upon entry, officers observed a woman looking into the attic. Suspicious, the officers yelled, and Petitioner came out of hiding from the attic. The officers patted Petitioner down and felt keys in his pocket. Petitioner claimed the keys did not belong to him and that he found them on the ground. The officers detained Petitioner. *Id.* at 92-98, PageID.481-487.

Berryman explained that access to the attic in the Algonquin house was through a hallway closet. He discovered a clip to an AK-47 rifle in a linen closet across from the closet with attic access. At a subsequent lineup, both Love and Easley picked Petitioner out of the lineup within a minute. *Id.* at 98-103, PageID.487-492. They viewed the lineup separately and did not interact with each other until after the lineup. *Id.* at 121-22, PageID.510-511.

On cross-examination, Berryman admitted no weapon was recovered and confirmed he did not know whether the clip he found in the house on Algonquin was attached to the weapon used during the carjacking on August 17, 2012. Nor did Berryman have the clip examined for fingerprints. *Id.* at 108-09, PageID.497-498.

Police officer Aaron Haley corroborated Officer Berryman's testimony regarding Petitioner's arrest at the house on Algonquin. Haley also testified that in his report about Petitioner's arrest, he did not record any comments that Petitioner made during his arrest. *Id.* at 111-116, PageID.500-505.

4

Petitioner and police officer Lisa Bryson were the only defense witnesses. Officer Bryson testified about the description that Easley gave of the suspect after the carjacking. Easley described the suspect to Officer Bryson as a black male, 20 years of age, 5'10" in height, 180 pounds, medium complexion, clean shaven, low cut hair, and wearing a white tee shirt. *Id*. at 124-28, PageID. 514-516.

Petitioner testified that he did not carjack or rob anyone and that he never possessed an AK-47 or assault rifle. He admitted that two days after the carjacking he drove a carjacked Buick Century a home on Algonquin Street. He also admitted that he knew at the time that the car was stolen, but he stated that he had borrowed the car from a friend named Damon Turner. He explained that he hid in the attic at the house on Algonquin because he thought that the police would arrest him for violating the terms of his probation for three prior convictions for home-invasion. On cross-examination, Petitioner stated that he was at home sleeping near his parents during the carjacking. *Id*. at 143-165, PageID.532-554.

On January 16, 2013, the jury found Petitioner guilty of carjacking, unlawfully driving away a vehicle, and receiving and concealing stolen property. The jury acquitted Petitioner of armed robbery and felony-firearm. 1/16/13 Trial Tr. at 48-49, ECF No. 12-8, PageID.604-605.

The trial court subsequently sentenced Petitioner as a habitual offender to a term of 15 to 30 years in prison for the carjacking offense and concurrent terms of

46 months to 15 years for the UDAA and stolen property convictions, with credit for 168 days.   2/1/13 Sentencing Tr. at 10, ECF No. 12-9, PageID.617.

## B. The Direct Appeal and Initial Habeas Petition

Petitioner appealed his convictions and sentences by right.  He argued through counsel that (1) the trial court erred when it denied his motion to suppress the pretrial identification, (2) he was denied a fair trial by the admission of evidence about the clip from an assault rifle, and (3) the trial court failed to apply the legal standard for the admissibility of evidence about his prior convictions.  Defendant-Appellant's Brief on Appeal, ECF No. 12-10, PageID.633-634.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions.  *People v. Finley*, No. 315248, 2014 WL 2810134 (Mich. Ct. App. June 19, 2014).

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court.  *See* Pro Per Application for Leave to Appeal, ECF No. 12-11, PageID.683-684.  On December 30, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *People v. Finley*, 497 Mich. 948; 857 N.W.2d 23 (2014).

On December 21, 2015, Petitioner filed his initial petition in this case, raising the same claims that he presented to the state courts on direct appeal.  *See* Pet. ECF No. 1.   Before the State could file an answer to the petition, Petitioner moved to hold his habeas petition in abeyance and to stay the federal proceeding while he

returned to state court and exhausted state remedies for additional issues.  *See* Mot. ECF No. 5.  On February 8, 2016, the Court granted Petitioner's motion and closed this case for administrative purposes.  Order, ECF No. 6.

## C. The Post-Conviction Proceedings in State Court and Second Petition

On April 12, 2016, Petitioner filed a *pro se* motion for relief from judgment in the state trial court.  *See* Post-Conviction Mot. for Relief from J., ECF No. 12-12. He argued that:  (1) he was deprived of his right to effective assistance of counsel when counsel failed to call a known alibi witness; (2) he was deprived of effective assistance of counsel when trial counsel failed to investigate, interview, and prepare two known witnesses for trial; (3) he was deprived of his rights to due process and fundamental fairness when the sentencing judge (a) relied on an unconstitutional prior conviction to score Prior Record Variable ("PRV") 5 and (b) erroneously scored Offense Variable ("OV") 1 and OV2; and (4) he was deprived of effective assistance of appellate counsel when counsel failed to recognize and argue the other claims in his motion.  *Id*. at PageID.748-778.

The trial court denied Petitioner's motion on April 19, 2016.  The court determined that trial and appellate counsel were not ineffective.  Although the court agreed with Petitioner that PRV 5 should not have been scored, the court stated that the changes did not affect the guidelines and that re-sentencing was not required. Op. and Order on Mot. for Relief from J., ECF 12-13.

Petitioner filed a delayed application for leave to appeal the trial court's decision on his post-judgment motion. *See* Application for Leave to Appeal, ECF No. 12-14, PageID.786-814. The Michigan Court of Appeals, however, denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *People v.* Finley, No. 333446 (Mich. Ct. App. Oct. 13, 2016).[1] On November 29, 2017, the Michigan Supreme Court denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Finley*, 501 Mich. 923; 903 N.W.2d 559 (2017).[2]

On January 22, 2018, Petitioner returned to this Court with a motion to reopen this case, Mot., ECF No. 7, and another petition for the writ of habeas corpus, Am. Pet., ECF No. 8. The new petition raised the four claims that Petitioner presented to the state courts in his motion for relief from judgment and subsequent appeals. On May 30, 2018, the Court granted Petitioner's motion to re-open this case and ordered the State to file a responsive pleading. Order, ECF No. 10. The State then filed an answer in opposition to Petitioner's two habeas petitions. Answer, ECF No. 11. The case is now ready for an adjudication of Petitioner's claims.

---

[1] Appellate Judge Cynthia Diane Stephens voted to grant Petitioner's application for leave to appeal and his motion to remand the case.

[2] Justice Elizabeth T. Clement did not participate in the decision.

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)) (alterations added).

> "[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495.  The state court's application of clearly established law must be objectively unreasonable. *Id.,* at 409, 120 S.Ct. 1495.

*Id.* at 75 (alterations added).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *pet. for cert. docketed*, No. 21-107 (U.S. July 27, 2021).

### III.    Discussion

### A. The Pretrial Lineup and Identification of Petitioner

Petitioner alleges first that the trial court violated his right to due process by denying his motion to suppress an unduly suggestive lineup. He claims that the lineup was tainted because the other individuals in the lineup were either taller or

shorter, heavier or lighter, and younger or older.  *See* Pet., ECF No. 1, PageID.4-5,

18-23.  The Michigan Court of Appeals adjudicated this claim on direct review and

concluded that the trial court did not err in finding that the lineup was not

impermissibly suggestive and in admitting the identification evidence.

### 1.  Clearly Established Federal Law

"The Constitution . . . protects a defendant against a conviction based on

evidence of questionable reliability, not by prohibiting introduction of the evidence,

but by affording the defendant means to persuade the jury that the evidence should

be discounted as unworthy of credit."  *Perry v. New Hampshire*, 565 U.S. 228, 237

(2012).   An identification procedure violates due process of law only if the

confrontation conducted was "unnecessarily suggestive and conducive to irreparable

mistaken identification."  *Neil v. Biggers,* 409 U.S. 188, 196 (1972) (quoting *Stovall*

*v. Denno*, 388 U.S. 293, 302 (1967)).

> If there is "a very substantial likelihood of irreparable
> misidentification," *Simmons v. United States*, 390 U.S. 377, 384, 88
> S.Ct. 967, 19 L.Ed.2d 1247 (1968), the judge must disallow
> presentation of the evidence at trial.  But if the indicia of reliability are
> strong enough to outweigh the corrupting effect of the police-arranged
> suggestive circumstances, the identification evidence ordinarily will be
> admitted, and the jury will ultimately determine its worth.

*Perry,* 565 U.S. at 232.

The United States Court of Appeals for the Sixth Circuit uses a two-part

analysis when evaluating whether an identification is admissible.

> The court first considers whether the procedure was unduly suggestive. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). The court must decide if the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection. *Wilson*, 250 F.3d at 397. "The defendant bears the burden of proving this element." *Ledbetter*, 35 F.3d at 1071 (citation omitted). If the procedure was suggestive, the court then determines whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Wilson*, 250 F.3d at 397 (citation omitted); *Ledbetter*, 35 F.3d at 1071.

*Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009).

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200; *see also Williams v. Bauman*, 759 F.3d 630, 639 (6th Cir. 2014) ("The 'corrupting effect of the suggestive identification' must be weighed against factors indicating that the eyewitness identification is reliable, including 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation'") (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

## 2.  Application of the Law

The Michigan Court of Appeals accurately summarized the relevant facts about the lineup in Petitioner's case as follows:

> Defendant was twice identified as the perpetrator from a lineup in which he and five other men were viewed separately by the complainants, Keith Easley and Crystal Monique Love. In the record of the lineup, defendant was listed as 23 years old, 6 feet tall, and 190 pounds. The other five men in the lineup were ages 20, 26, 32, 34, and 39. The other men ranged in height from 5' 6" to 5' 10" tall. Further, the men ranged in weight from approximately 150 pounds to 215 pounds. All six of the men in the lineup, defendant included, were described as having a medium complexion. Officer John Berryman testified at the hearing that he told Easley, "We've got a lineup. There may or may not be somebody in there you recognize. If you recognize somebody tell me what you recognize them from and what they did." Rita White, a neutral attorney appointed to ensure the fairness of the lineup, stated that she found nothing wrong with the procedures used in conducting the lineup.

*Finley*, 2014 WL 2810134, at *2; *see also* 12/7/12 Wade Hr'g Tr., ECF No. 12-4,

and ECF No. 12-10, PageID.658 (the show-up & photo identification record). The

Michigan Court of Appeals concluded from this evidence

> that the trial court did not clearly err in admitting the identification evidence because there was no substantial likelihood of misidentification resulting from the pretrial identification procedure. The lineup was comprised of men both younger and older than defendant, included men that were within a few inches of defendant's height and generally of the same weight and build as defendant. Further, all of the participants had the same complexion as defendant. Any minor physical differences in appearance between defendant and other lineup participants did not render the lineup impermissibly suggestive. Finally, the police never told Easley that a possible suspect was in the lineup and an independent attorney found the lineup procedures appropriate.

*Finley*, 2014 WL 2810134, at *2. While there were variations in age, height, and

weight, even defense counsel seemed to concede at the suppression hearing that one

participant in the lineup was sufficiently similar in appearance to Petitioner.  *See* 12/7/12 Wade Hr'g Tr. at 14, 26-27, ECF 12-4, PageID.230, 242-243.

Further, even if the lineup was impermissibly suggestive, the complainants had an independent recollection of Petitioner, and it is not likely that they misidentified him.  As the Court of Appeals pointed out,

> although Easley did not claim to know defendant before the carjacking, he testified that he clearly saw defendant on the night of the incident because the parking lot was well-lit with street lights. The lineup procedure occurred within approximately 36 hours of the carjacking. Easley's prior description of defendant was substantially correct when compared to defendant's actual appearance, and Easley never named anyone else as a possible suspect before identifying defendant.  And, finally, Easley never stated that he was so scared during the carjacking that his memory of defendant's appearance may have been affected; in fact, he was "very confident" that his identification was correct.

*Finley*, 2014 WL 2810134, at *3.

Love also had an independent basis for identifying Petitioner.  Although she did not observe the carjacking, she saw him driving her stolen car two days later.  At one point while she was following Petitioner, he stopped, and she went around him. A few minutes later, Petitioner drove past her, and they looked at each other.  She continued to follow Petitioner, saw him park her car, and get out of the car.  She claimed that she could see Petitioner because they "looked face to face."  The lineup in which she identified Petitioner happened the same day that she saw him driving her stolen car.  At trial, she was very confident in her identification, and she had no

doubt that Petitioner was the man driving her car two days after the carjacking.  *See*

1/15/13 Trial Tr. at 70-72, 76-77, ECF 12-7, PageID.459-461, 465-466.

To summarize, the lineup was not impermissibly suggestive, and even if it

was, there were independent and reliable bases for the complainants' identifications

of Petitioner.  They had good opportunities to view Petitioner during their prior

contacts with him, they focused their attention on him, they were certain of their

identifications, and the length of time between the crime and the lineup was short.

Furthermore, the conclusions reached by the Michigan Court of Appeals were

objectively reasonable and based on a reasonable assessment of the facts.  Petitioner

is not entitled to relief on his first claim.

### B. Evidence about the Clip for an Assault Rifle

The second habeas claim alleges that Petitioner was denied a fair trial by the

introduction of prejudicial evidence regarding the clip that was seized from the house

where he was arrested.  *See* Pet., ECF No. 1, PageID.6, 24-28.  The Michigan Court

of Appeals provided the following background for Petitioner's claim:

> On the second day of trial, the prosecutor proffered Berryman's
> testimony, outside of the presence of the jury, to establish the link
> between defendant and an AK–47 clip found in the closet of a home on
> Algonquin Street.  Before the proffer, Easley had testified that
> defendant wielded an assault rifle during the carjacking.  Berryman
> testified that the AK–47 clip was found in a closet only three feet from
> the access point to the attic that defendant had used.  Further, the clip
> was laying uncovered, "out in the open" on a shelf in the closet.  The
> court found that defendant was in close proximity to the closet and the
> clip, and the probative value of the evidence was not substantially

> outweighed by the danger of unfair prejudice. MRE 403. Thus, the
> trial judge allowed Berryman to testify to his recovery of the clip after
> defendant's arrest.

*Finley*, 2014 WL 2810134, at *3; *see also* 1/15/13 Trial Tr. at 82-90, ECF No. 12-

7, PageID.471-479 (Officer Berryman's testimony in the jury's absence, the parties'

arguments, and the trial court's ruling on the admissibility of the clip).

Although Petitioner contends that the clip was prejudicial and unconnected to

the crimes at issue, the Michigan Court of Appeals pointed out that the circumstances

surrounding the discovery of the clip tended to establish Petitioner's connection to

it. The Court of Appeals also stated that even though the clip was prejudicial

evidence, it was not unfairly prejudicial. The Court of Appeals then concluded from

Easley's testimony -- that Petitioner used an assault rifle like an AK-47 during the

carjacking -- that the probative value of the evidence was not outweighed by the

danger of unfair prejudice. *See Finley*, 2014 WL 2810134, at *4.

This Court rejects Petitioner's claim because federal habeas courts usually do

not question state-court rulings on the admission or exclusion of evidence under state

law. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[S]tates have wide

latitude with regard to evidentiary matters under the Due Process Clause," *Wilson v.*

*Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017), and a trial court's evidentiary error does

not rise to the level of a federal constitutional claim warranting habeas corpus relief

unless the error rendered the proceeding fundamentally unfair, *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

Here, the police found the clip near the place that Petitioner entered the attic to avoid detection, and Easley testified that Petitioner approached him with an assault rifle that had a clip attached. The jury could have inferred that the clip came from the rifle used in the carjacking and that Petitioner discarded the clip before climbing into the attic. Because the clip tended to link Petitioner to the carjacking, and because Petitioner had an opportunity to refute testimony about the clip and the assault rifle, it was not fundamentally unfair to admit into evidence the clip and testimony about the clip. Petitioner is not entitled to relief on his second claim.

## C. Evidence of Petitioner's Prior Convictions

The third habeas claim alleges that the trial court failed to apply the legal standard for the admissibility of evidence concerning his prior convictions. *See* Pet., ECF No. 1, PageID.7, 29-31. The Michigan Court of Appeals explained the basis for this claim as follows:

> At trial, defendant stated that he wished to testify on his own behalf. After defendant so stated, defense counsel moved in limine to exclude mention of defendant's prior criminal convictions. The prosecutor argued that defendant's three convictions for home invasion and one conviction for receiving and concealing stolen property all had an element of theft, and therefore, were admissible under MRE 609. Defense counsel agreed that defendant could be impeached using his three prior home invasion convictions but argued that the prosecutor could not mention defendant's prior conviction for receiving and concealing stolen property because it was identical to one of the

charged offenses.  The trial court granted defendant's motion to exclude mention of his prior conviction for receiving and concealing stolen property.

*Finley*, 2014 WL 2810134, at *4**;** *see also* 1/15/13 Trial Tr. at 130-134, ECF No. 12-7, PageID.519-523 (Defense counsel's oral motion *in limine* to exclude evidence of Petitioner's prior convictions).  Although Petitioner contends that the trial court failed to conduct any analysis regarding his three prior convictions for home invasion, the Michigan Court of Appeals concluded that Petitioner waived review of his claim.

A waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege," and a determination of whether there has been an intelligent waiver of the right to counsel "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  When a defendant intentionally relinquishes and affirmatively waives a right, a claim based on that right is waived and a court need not review it.  *See United States v. Montgomery*, 998 F.3d 693, 697-98 (6th Cir. 2021); *see also Tackett v. Trierweiler*, 956 F.3d 358, 371 (6th Cir. 2020) (concluding that a habeas petitioner waived review of a claim about the jury instructions because he affirmatively approved the jury instructions at trial).

The record before the Court supports the state appellate court's conclusion that Petitioner waived review of his claim when defense counsel agreed with the prosecutor that Petitioner's prior convictions for home invasion were admissible. *See* 1/15/13 Trial Tr. at 131, 133, ECF No. 12-7, PageID.520, 522.  Petitioner, nevertheless, maintains that he did not agree to being impeached with his prior convictions for home invasion and that he should not be held accountable for the actions of his trial attorney because the attorney failed to consult with him on the issue.  *See* Pet., ECF No. 1, PageID.7.

The trial court, however, specifically warned Petitioner that, if he testified, the prosecutor could question him about his three prior convictions for home invasion and any other evidence that involved theft or dishonesty.  *See* 1/15/13 Trial Tr. at 141, ECF No. 12-7, PageID.530.  Petitioner stated that he understood, that he still wished to testify, and that he was testifying freely and voluntarily.  *See id*. at 141-42, PageID.530-531.  Minutes later, he took the stand and testified.  *See id*. at 142-143, PageID.531-532.

Petitioner's decision to testify, knowing that he could be impeached with his prior convictions for home invasion, supports the state appellate court's decision that Petitioner waived review of his claim about the admission of his prior convictions for home invasion.  Even if Petitioner did not waive review of his claim, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due

process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Therefore, Petitioner's third claim would not be cognizable on habeas review even if it were not waived.

### D. Trial Counsel

Petitioner's next two claims allege ineffective assistance of trial counsel. In his fourth claim, Petitioner asserts that trial counsel failed to call his girlfriend, Miya Lewis, as an alibi witness. Lewis was on defense counsel's witness list, *see* Am. Pet., ECF No. 8, PageID.92, and Petitioner alleges that defense counsel never called her to testify even though Lewis was waiting in the witness room during trial. According to Petitioner, Lewis would have testified that she and Petitioner were at home asleep at the time of the crimes. Petitioner contends that this testimony would have bolstered his own testimony that he did not carjack the complaining witness, and it would have undermined the credibility of the State's witnesses. *See* Am. Pet., ECF No. 8, PageID.74-77.

Petitioner's fifth claim alleges that trial counsel did not investigate or interview Petitioner's mother and sister and did not prepare the two women for testifying on his behalf at trial. Petitioner contends that counsel's failure to call his relatives as witnesses to his whereabouts on the night in question was deficient performance. He also contends there is a reasonable probability that counsel's deficient performance affected the outcome of the trial. *See id*. at PageID.78-81.

Petitioner first raised these claims in his motion for relief from judgment. The state trial court rejected the claims on the merits,[3] and the state appellate courts denied leave to appeal without any discussion on the issue.

---

[3]  The State contends that the trial court rejected Petitioner's claims under Michigan Court Rule 6.508(D)(3) and, therefore, Petitioner's fourth and fifth claims, as well as his sixth claim, are procedurally defaulted. Rule 6.508(D)(3) states in relevant part that a court may not grant relief from judgment if the defendant's motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the judgment conviction and sentence . . . unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal . . . and (b) actual prejudice from the alleged irregularities that support the claim for relief."

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). But "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted). !!!

The state trial court cited Rule 6.508(D)(3) in its order denying Petitioner's motion for relief from judgment, but it did not clearly and expressly state that it was denying Petitioner's motion due to his failure to raise his claims on direct appeal. Instead, the court addressed Petitioner's claims on the merits. This Court, therefore, declines to find that Petitioner's fourth, fifth, and sixth claims are procedurally defaulted.

Even if Petitioner procedurally defaulted those claims, a procedural default ordinarily is not a jurisdictional matter, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016), and because Petitioner's claims can be resolved against him relatively easily, the Court may bypass the procedural-default question. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court proceeds to the merits of Petitioner's claims.

### 1.  Clearly Established Federal Law

The clearly established federal law for Petitioner's ineffectiveness claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).  In *Strickland,* the Supreme Court stated that "the proper standard for attorney performance is that of reasonably effective assistance."  *Strickland*, 466 U.S. at 687.  To establish that counsel's assistance was so defective as to require reversal of a conviction, a convicted person must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Id*.  Unless the convicted individual "makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id*.

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  A defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  Because of the difficulties inherent in evaluating an attorney's performance,

> a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in

> any given case.  Even the best criminal defense attorneys would not
> defend a particular client in the same way.

*Id*. (internal citation omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome;'" instead, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

Petitioner's specific claims are that his trial attorney failed to investigate and produce alibi witnesses.  Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S.  at 691.  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

"[T]he failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).  "But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of

reasonable professional judgment.'" *Pinholster*, 563 U.S. at 196 (quoting *Strickland*, 466 U.S. at 689-90); *see also Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (noting that, under *Strickland*, the court was required to "presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy") (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).  "[C]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1353–54 (6th Cir. 1993).

### 2. Trial Counsel's Performance

It is clear from the record in this case that defense counsel made a strategic decision not to pursue an alibi defense.  During the prosecutor's cross-examination of Petitioner, the prosecutor asked Petitioner whether he knew where he was when the car in question was carjacked.  Petitioner responded that he was asleep at home then and that his parents were also there at the time.  The prosecutor then asked, "Are they here today?"  Petitioner answered, "No." *See* 1/15/13 Trial Tr. at 155-156, PageID.544-545.  The prosecutor later made the same inquiry, and Petitioner once again stated that although he was home with his parents in the early morning hours of August 17, his parents were not in court. *See id* at 160, PageID.549.

During closing arguments, defense counsel responded to the prosecutor's questions by saying,

So let me understand what the Prosecutor is saying.  I was supposed to run an alibi defense?  I was supposed to put the mother and dad on the stand so he can attack the mother and dad [by] saying hey, this is someone that you love?

He would have completely attacked the mother and father as having [come] to court and just say[ing] anything to protect their child.  Or even better yet – if the Prosecutor had asked, 'Well, what were you doing?  Carlos said he was sleeping'.  So mom and dad are sleeping?  He could attack them [by] saying, Well, Carlos could have slipped out into the night and c[o]me back?  There's no way I could have r[u]n an alibi defense.  I'm under no obligation to put on an alibi defense – and you heard that from the Judge.  The Judge himself told you we could sit there and play cards if we wanted to.  Don't fall for that.  There was no obligation whatsoever to put mom and dad on the stand for the Prosecutor to attack.

1/16/13 Trial Tr. at 18-19, ECF No. 12-8, PageID.574-575.

Furthermore, as pointed out by the trial court in his order denying Petitioner's

post-conviction motion, defense counsel's

theory was laid out clearly and forcefully.  From the outset defense counsel's focus was on identification.  He attacked the line-up procedure used by the Detroit Police.  Although he did not prevail[,] his efforts formed the basis for an issue for appellate review.

He hammered on the issue of the general weakness of eyewitness identification.  Defense counsel convinced the trial court to extensively revise the language of the standard jury instruction.  He repeatedly addressed the issue of facial hair and other discrepancies in his examination of the complaining witness and in his closing argument.

Op. and Order on Mot. for Relief from J. at 4, ECF No. 12-13, PageID.782.

The trial court went on to point out that, instead of allowing the prosecutor to

attack the credibility of family witnesses based solely on their relationships, defense

counsel "returned to a more objective argument of misidentification based on the defendant's booking photo showing a full beard [--] as contrasted by the complaining witness' indication that the perpetrator had no facial hair – after a lapse of only two days. *See id.* at 4-5, PageID.782-783.

It is also noteworthy that during closing arguments, defense counsel conceded Petitioner's guilt on the receiving-and-concealing count and urged the jury to find Petitioner not guilty of carjacking, armed robbery, and felony-firearm. In the end, the jury came close to doing what defense counsel asked of them. They acquitted Petitioner of armed robbery, which carries a maximum penalty of life imprisonment. *See* MICH. COMP. LAWS § 750.529(2). They also acquitted him of felony-firearm, which would have carried a flat five-year prison term, according to the prosecuting attorney. *See* 2/1/13 Sentencing Tr. at 12, ECF No. 12-9, PageID.619; *see also* MICH. COMP. LAWS § 750.227b(1) and (3) (indicating that a second conviction for felony-firearm is punishable by imprisonment for five years and that the term of imprisonment must be served consecutively to, and preceding, any term of imprisonment imposed for the underlying felony).

The prosecutor complimented defense counsel on his accomplishments and stated that Petitioner should be appreciative. *See* Sentencing Tr. at 12, ECF No. 12-9, PageID.619. The trial court agreed and said,

> [T]here's no question in my mind that [defense counsel] very ably
> represented Mr. Finley both in the pre-trial stages in the motions he

presented and in the representation at trial. . . .   I think but for the representation, some fairly significant additional penalties . . . would have been required to be meted out.

*Id.*

Petitioner has not overcome the presumption that trial counsel's alleged failure to investigate and to produce alibi witnesses was sound trial strategy.  Further, the state trial court's adjudication of Petitioner's claims about trial counsel was objectively reasonable.  Thus, Petitioner has no right to relief on his ineffective assistance of counsel claims.

### E. The Sentence

Petitioner's sentencing claim alleges that the sentencing judge (i) used an unconstitutional prior conviction to score PRV 5 and (ii) erroneously scored OV 1 and OV 2.  *See* Am. Pet. 12-16, ECF No. 8, PageID.82-86.  The trial court agreed with Petitioner on post-conviction review that the score for PRV 5 should have been zero.   However, because the corrected score did not change the sentencing guidelines, the court simply corrected the sentencing information report ("SIR") and ordered that the corrected SIR be filed with the Department of Corrections.  The court stated that no additional relief was necessary.  *See* Op. and Order on Mot. for Relief from J., ECF No. 12-13 at 5, PageID.783.  Petitioner received all the relief to which he was entitled.  Therefore, his claim about PRV 5 is moot.

Petitioner's other sentencing claim alleges that the trial court incorrectly scored Offense Variables 1 and 2.  *See* Am. Pet. at 14-16, ECF No. 8, PageID.84-86.  The trial court found that Petitioner had not "demonstrated error in the scoring of OV I and OV 2 as articulated by the court based upon *People v. Harverson*, 291 Mich App 171 (2010)."  Op. and Order on Mot. for Relief from J., ECF No. 12-13 at 5, PageID.783.  Furthermore, "OV 19 would have been properly scored at 10 due to defendant hiding in the attic," which would have kept the guidelines at a level II if OV 1 and OV 2 were scored incorrectly and increase the guidelines to a level III if it were applied.  *Id*.

This contention is not a cognizable claim on habeas review because a state court's application and interpretation of state sentencing guidelines is "a matter of state concern only."  *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  And "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Federal review of a state conviction is limited to whether the "conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Petitioner therefore argues that the scoring of OV 1 and OV 2 deprived him "of his right to due process and fundamental fairness under the [Fourteenth] Amendment to the United States Constitution."  Am. Pet. at 14, ECF No. 8,

PageID.82.   A sentence violates due process of law if the trial court relied on extensively and materially false information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948).  To obtain relief, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L. Ed. 2d 592 (1972).

Here, the trial court determined on review that even if it had relied on incorrect information, it was offset by the incorrect score given to OV 19 and thus had no effect on the guidelines level.  Although he raised this claim in his applications, both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave to appeal.  The state appellate court's interpretation of state sentencing law binds this Court on habeas corpus review, *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005), and "[a]n error in Guidelines calculation is harmless if correcting the error would result in no change to the Guidelines offense level and sentencing range." *United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015).  Because the alleged errors in scoring OV 1 and OV 2 did not affect the sentencing guidelines range, the trial court's alleged errors were harmless, and the sentence was not based on misinformation of constitutional magnitude.  Petitioner is not entitled to relief on his claim.

### F. Appellate Counsel

Petitioner's seventh and final claim alleges that his appellate attorney deprived him of effective assistance by failing to recognize and argue his fourth, fifth, and sixth claims. *See* Am. Pet., ECF No. 8, PageID.87-88. The state trial court addressed this claim on post-conviction review and concluded that, because Petitioner failed to demonstrate a deficiency by trial counsel, appellate counsel was not deficient.

Claims about appellate counsel are also evaluated using the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim, Petitioner must demonstrate (1) that appellate counsel acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised all his claims. *Id*. (citing *Strickland,* 466 U.S. at 687-91, 694); *see also Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020) (stating that, "to prevail on a *Strickland*-based ineffective assistance of appellate counsel claim, [the petitioner] must satisfy two prongs: (1) that his appellate counsel was deficient, and (2) that the deficiency prejudiced him"), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021).

An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional

judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). And Petitioner's claims about trial counsel lack merit for the reasons given above in the discussion on those claims. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Moreover, the state trial court's conclusion -- that appellate counsel was not ineffective for failing to raise an ineffectiveness claims about trial counsel -- is not unreasonable.

Here, because Petitioner has not established counsel was deficient for failing to raise his fourth, fifth and sixth habeas corpus claims or that he was prejudiced thereby. Petitioner's claim about appellate counsel fails.

## IV.   Conclusion

Petitioner waived review of his third claim about his prior convictions, and the state courts' adjudication of his other claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. Neither were the state-court decisions so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly, **IT IS ORDERED** that the two petitions for a writ of habeas corpus are **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which requires showing that the appeal is not frivolous." *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir. 1997)).   Petitioner's claims are not frivolous.

**IT IS FURTHER ORDERED** that an appeal from this decision could be taken in good faith, and Petitioner may proceed *in forma pauperis* on appeal. *See id*. at 764-65 (citing 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2); *Sweeney v. Smith,* 9 F.Supp.2d 1026, 1027 (E.D. Wis.1998)).

**IT IS SO ORDERED**.

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

Dated: September 30, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 30, 2021, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager